IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.  Criminal No. 2:08cr108

OTIS LEE STITT,

Defendant.

## ORDER

This matter comes before the Court upon the Motion to Suppress filed by Otis Lee Stitt ("Defendant") on October 20, 2008. On October 30, 2008, the Government filed a response. On November 24, 2008, the parties appeared before the Court for a hearing on the Motion to Suppress. The Motion has been fully briefed and is ripe for review by this Court. For the reasons set forth below, the Court hereby **DENIES** the Defendant's Motion to Suppress.

I.  **FACTUAL BACKGROUND**

The following facts were established at the suppression hearing and are not in dispute.

On February 29, 2008, Portsmouth Police Officer Hawes stopped a blue Acura traveling on Portsmouth Boulevard at 67 miles per hour in a posted 35 miles per hour zone. As Officer Hawes pulled in behind the vehicle, he observed the driver and sole occupant, later identified as the Defendant, make a lifting motion above the center console of the vehicle.

The Defendant pulled the Acura into the parking lot of a business establishment named Magik City, parked across multiple parking spaces, exited the vehicle, and shut the door behind

1

him. The vehicle was parked in a manner that blocked vehicular traffic within the parking lot. The defendant also locked the door as he exited the vehicle, leaving the keys to the vehicle plainly visible on the driver's floorboard. Officer Hawes instructed the Defendant to return inside his car, but the Defendant refused to do so as his keys were locked inside of the vehicle.

Officer Hawes then inspected the Defendant's license and began to issue traffic summonses, including a summons for operating a motor vehicle after the Defendant's privilege to do so had been suspended.

As this was a high-crime area, Officers Colburne and Spaven, also members of the Portsmouth City Police Department, arrived as backup to Officer Hawes and stood with the Defendant outside of the Acura.

Throughout the license inspection, the Defendant repeatedly placed his hands in his pockets, fidgeted, and glanced around. Officer Colburne instructed the Defendant to stop moving his hands. The Defendant then reached into his pocket, removed a knotted plastic baggie, placed the baggie into his mouth, bit off the end, and discarded the remainder of the baggie on the ground.

After observing this, Officer Colburne attempted to place the defendant into investigative detention, but the Defendant broke free by pushing the officer and running from the scene. After pushing Officer Colburne, the Defendant ran into a private security guard for Magik City. A foot pursuit took place and the police officers apprehended the Defendant and placed him under arrest.

Officer Hawes then impounded the vehicle and called for a wrecker service to tow the Defendant's vehicle from the parking lot of Magik City.

The towing vehicle had equipment which enabled Officer Hawes to open the Defendant's locked car door. Once the car was unlocked, Officer Hawes conducted a pre-tow inventory.

During the course of a pre-tow inventory, Officer Hawes located a loaded Taurus Millennium .45 caliber handgun, an extra magazine, and a plastic sandwich baggie containing a large quantity of an individually packaged rock-like substance he believed to be "crack" cocaine.

## II. LEGAL ANALYSIS

Searches conducted without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment, with only a few specific exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978). The Government argues that the evidence seized in this case was lawfully obtained by the police, as it was part of both (1) a search incident to a lawful arrest and (2) a proper inventory search.

The Defendant argues the warrantless search of his vehicle violated his Fourth Amendment rights against unreasonable search and seizure. First, the Defendant claims that there was insufficient cause for his detention and the search incident to arrest was therefore unlawful. Secondly, the Defendant claims that the impoundment and inventory search did not satisfy the community caretaker exception to the warrant requirement and was merely a pretext for an investigatory search. Accordingly, the Defendant requests this Court to suppress all evidence obtained by law enforcement officials.

Each of the Defendant's arguments are addressed in turn.

### A. DEFENDANT'S ARREST AND VEHICLE SEARCH

Pursuant to Terry v. Ohio and its progeny, an officer may stop and briefly detain a person for investigative purposes when there is reasonable suspicion, based on articulable facts, that

3

criminal activity is afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances. Sokolow 490 U.S. at 8.

On several fronts, the defendant's behavior created reasonable suspicion on the part of the officers that "criminal activity was afoot." First, the Defendant's initial response to a traffic stop was to immediately exit the vehicle, throw the keys on the floorboard, lock and then shut the door. Additionally, the Defendant made furtive movements by placing his hands in and out of his pockets, despite the repeated requests by Officer Colburne to stop moving. Lastly, the Defendant removed a knotted plastic baggie from his pocket, which the officers knew through training and experience to be a common way of packaging narcotics. When the Defendant bit the end off and threw the remainder of the baggie on the ground, the officers could presume that the Defendant swallowed a quantity of an illegal substance. The officers were legally permitted at that point to detain the defendant to determine if he possessed other illegal substances.

The Defendant then committed a series of crimes once the police attempted to detain him: he attempted to escape lawful custody, assaulted Officer Colburne, and assaulted the security guard for Magik City. Once apprehended, police officers could arrest him for any of the offenses he committed.

The Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. New York v. Belton, 453 U.S. 454, 460-61 (1981). The Supreme Court has extended the rule to permit the search of vehicles incident to arrests made outside of the vehicle as long as the arrested individual was a recent occupant of the

vehicle. Thornton v. U.S., 541 U.S. 615, 623 - 24 (2004). In Thornton (as in this case) the driver of the vehicle pulled to a stop and exited the vehicle before the police could make contact with him. The Court held that the search of the passenger compartment was proper after police arrested the suspect. Id.

The Court in Thorton justified the extension of the rule from Belton to recent occupants arrested outside of a vehicle because "the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." Id. at 621. In this case, the Defendant shut the door to the car and locked his keys inside of it as he approached the police just outside of his vehicle. This Court finds no distinction between this case and the facts present in Thorton, aside from the pure serendipity of the Defendant's decision to blatantly ignore police instructions, exit his vehicle, and lock his car door.

Accordingly, this Court feels compelled to follow the rules from Belton and Thorton and denies the Defendant's Motion to Suppress with respect to Officer Hawes' search of the Defendant's car incident to and contemporaneous with the Defendant's arrest. The Court finds that there is no question that the Defendant's actions within the parking lot of Magik City provided the police with ample justification to detain him. The police were then justified in searching the Defendant's vehicle given that the Defendant was a recent occupant of that vehicle.

## B.  IMPOUND AND INVENTORY OF THE VEHICLE

"An inventory search may be 'reasonable' under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause." Colorado v. Bertine, 479 U.S. 367, 371-72 (1987). The Supreme Court has found that inventory procedures help to protect an

owner's property, prevent claims of lost or stolen property, and protect the police from danger. In light of strong governmental interests and the "diminished expectation of privacy in an automobile," the courts accord "deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." Id. at 372.

The Defendant argues that the impound and subsequent search of his vehicle was improper because Officer Hawes did not follow standardized "caretaking procedures"–that is, he was unreasonable in impounding the car, the impounding was not carried pursuant to standard police procedures, and the inventory search was merely a pretext for an investigatory search

The facts show that Officer Hawes followed standardized caretaking procedures when he arranged for the impound of the vehicle and noted its contents. Id. at 368 (holding that in the absence of showing that police, who followed standardized caretaking procedures, acted in bad faith for the sole purpose of investigation in conducting an inventory search, evidence discovered during a search is admissible).

The Portsmouth Police Department General Orders Manual entitled "Towing and Impounding of Vehicles" defines an impound as "any vehicle that is taken by a wrecker to the City of Portsmouth Vehicle Impound Lot." (Def.'s Mot. to Suppress Appx. A 1.) The Manual states that "[t]he Portsmouth Police Department may tow or impound a vehicle for investigative purposes, *to protect the vehicle and its contents*, and other public safety concerns." Id. (emphasis added). It then lists situations in which a vehicle is normally impounded, including, "[v]ehicles that are illegally parked and require immediate removal." Id. at 2.

The General Orders Manual also mandates that "[m]embers of the Portsmouth Police Department will inventory the contents of all vehicles impounded for any reason." (Def.'s Mot

to Suppress Appx B 2.) It then provides guidelines to follow when conducting an inventory, adding that "officers shall not attempt to forcibly gain entry in to a locked vehicle or any part thereof unless exigent circumstances are present warranting such entry." Id.

The Supreme Court has made clear that the existence of less intrusive means of conducting a search or seizure does not render a search or seizure unreasonable so long as the circumstances indicate that the officers' actions were reasonable. Illinois v. Lafayette, 462 U.S. 640 (1983). Additionally, the law within this Circuit plainly establishes that a police officer is reasonable in impounding a vehicle to protect it or to remove it as a nuisance after arresting the driver. See United States v. Brown, 787 F.2d 929 (4th Cir. 1986); Cabbler v. Superintendant, Va. Penitentiary, 528 F.2d 1142 (4th Cir. 1975).

In the instant case, this facts show that Officer Hawes' decision to impound the vehicle was a reasonable one. Testimony and photographic evidence show that the Defendant's car was parked over multiple spaces and was positioned in such a manner as to block vehicular traffic within the Magik City parking lot. Furthermore, testimony revealed that the area in which the arrest took place was a "high-crime" area and the Defendant's keys were visible on the floorboard of his car. The fact that the Defendant's car was parked within a private parking lot does not alter this Court's decision. See Furman v. Call, 234 Va. 437 (1987) (determining whether a way is a "highway" depends upon the degree to which the thoroughfare is open to the public; a parking lot is a highway under Virginia law if the lot is open to the public twenty-four hours a day).

Moreover, there is no indication of pretext here. "A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration conducted to protect

7

the arrestee from theft of his possessions, the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." United States v. Banks, 482 F.3d 733, 739 (4th Cir. 2007) (citing Lafayette, 462 U.S. at 644-46 (1983)).

This Court finds that Officer Hawes was reasonable under the circumstances in impounding the Defendant's car and conducting an inventory search pursuant to Portsmouth City police procedures. Because it was reasonable under the circumstances and within standard administrative police procedures, the inventory search was not merely a pretext for an investigatory search. Consequently, this Court will not suppress all evidence obtained by law enforcement officials as a result of the inventory search.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the Defendant's motion to suppress.

The Clerk is **DIRECTED** to forward a copy of this Order to the United States Attorney, the Defendant, and all counsel of record.

**IT IS SO ORDERED.**

November 26, 2008
Norfolk, Virginia

Robert G. Doumar
Senior United States District Judge