FILED
JUL 12 2012
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

OTIS LEE STITT,
    Petitioner,

v.                                        Criminal No. 2:08cr108
                                           Civil No. 2:11cv358

UNITED STATES OF AMERICA,
    Respondent.

## OPINION AND ORDER

Presently before the Court is Petitioner Otis Lee Stitt's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Motion to Vacate"), filed pursuant to 28 U.S.C. § 2255. Petitioner seeks relief based on the following arguments: (i) defense counsel was ineffective for failing to conduct reasonable investigations, (ii) defense counsel labored under a conflict of interest, (iii) defense counsel was ineffective for failing to file a motion to sever, and (iv) defense counsel's performance was generally deficient. Based on these alleged violations of his rights, Petitioner asks the Court to vacate the sentence imposed upon him on April 20, 2009. For the reasons stated herein, Petitioner's Motion to Vacate is hereby **DENIED**.

I.    **PROCEDURAL HISTORY**

On June 18, 2008, a federal grand jury sitting in Norfolk, Virginia returned a five-count indictment against Petitioner charging him with using and carrying a firearm during a drug trafficking crime (Count One), possession with intent to distribute cocaine base (Counts Two and Five), possession with intent to distribute cocaine (Count Three), and felon in possession of a firearm (Count Four). These charges arose from a February 29, 2008, traffic stop conducted on

Petitioner's vehicle in Portsmouth, Virginia, during which he was found in possession of various contraband (Counts One through Four), as well as a separate traffic stop in Virginia Beach, Virginia, on April 17, 2007, during which officers found cocaine base in Petitioner's vehicle (Count Five).

This Court initially appointed Assistant Federal Public Defender Richard Colgan to represent Petitioner in this matter. Approximately two and a half weeks before trial was set to commence, Mr. Colgan filed a motion to suppress all evidence seized during the February 29, 2008, traffic stop and subsequent inventory search of Petitioner's vehicle by the Portsmouth Police Department. The Court denied this motion as untimely.

Six days before trial was set to begin, Mr. Colgan filed a motion to withdraw as Petitioner's attorney, citing a complete breakdown in the attorney-client relationship.[1] Shortly thereafter, Mr. Colgan filed a supplemental motion to withdraw, indicating that he had discovered a conflict of interest between Petitioner and another client represented by the Office of the Federal Public Defender. (Docket No. 22.) Following a hearing, the Court granted Mr. Colgan's motion to withdraw and appointed Mr. Lawrence H. Woodward, Jr., to represent Petitioner. (Docket No. 26.) The Court also continued the trial date to allow Mr. Woodward sufficient time to prepare.

On October 20, 2008, Mr. Woodward filed a motion to suppress all evidence seized as a result of the February 29, 2008, traffic stop and subsequent inventory search of Petitioner's vehicle. (Docket No. 31.) Following a hearing, the Court denied Petitioner's motion. (Docket No. 36.)

---

[1] In his motion, Mr. Colgan stated as follows: "the defendant is dissatisfied with all aspects of counsel's work on his behalf... The defendant's dissatisfaction has completely colored all communications. The relationship of trust and confidence between Mr. Stitt and counsel, tenuous to begin with and essential for the effective assistance of counsel at trial, has completely broken down." Docket No. 22.

On December 3, 2008, Mr. Woodward filed a motion to withdraw as counsel for Petitioner, contending that Petitioner had constantly questioned Mr. Woodward's "integrity, competency, and honesty," and that Petitioner had requested that Mr. Woodward perform actions that were, in Mr. Woodward's judgment, "unethical and not in keeping with [his] obligations as an officer of the Court." (Docket No. 37.) On December 8, 2008, United States Magistrate Judge Tommy E. Miller held a change of plea hearing. At the hearing, Mr. Woodward withdrew his motion to withdraw, and Defendant entered a conditional guilty plea as to Counts One through Four of the Indictment, and a plea of guilty as to Count Five of the Indictment. The parties did not enter into a plea agreement. During the plea hearing, while under oath, Petitioner indicated that he had discussed the facts of the case with his attorney, Mr. Woodward, and that he was satisfied that Mr. Woodward had considered all possible defenses that might be raised to the charges. (Plea Hr'g Tr. 17:2-10.) Petitioner also indicated that he agreed with the Statement of Facts underlying his guilty plea, which detailed the traffic stops that occurred on April 17, 2007, and February 29, 2008.

On April 23, 2009, this Court accepted Petitioner's guilty plea, and sentenced Petitioner to a term of 180 months imprisonment, consisting of 60 months on Count One, consecutive, and 120 months on Counts Two through Five, concurrent. On April 28, 2009, Petitioner timely appealed this judgment. On appeal, Petitioner challenged this Court's denial of his motion to suppress. On June 8, 2010, the United States Court of Appeals for the Fourth Circuit affirmed the judgment of this Court in an unpublished opinion. (Docket No. 60, 61.) Petitioner sought a rehearing *en banc*, which the Fourth Circuit denied on July 7, 2010. (Docket No. 62, 63.) Thereafter, Petitioner petitioned the Supreme Court of the United States for a writ of certiorari, which the Court denied on November 8, 2010.

On November 29, 2010, Petitioner filed a motion for the appointment of counsel to assist him in preparing a motion to vacate pursuant to 28 U.S.C. § 2255. (Docket No. 66). Finding that Petitioner had failed to show that the interests of justice required the appointment of counsel, the Court denied this motion. (Docket No. 67.) On June 27, 2011, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, along with a memorandum and affidavit in support thereof.[2] (Docket No. 68, 69, 70.) Following two extensions of time to respond, the United States submitted a reply in opposition to Petitioner's motion on January 5, 2012. (Docket No. 78.) Due to a recent decision issued by the American Bar Association ("ABA"), in which the ABA held that it was "highly unlikely" that defense counsel would be justified in providing information to a prosecutor in response to a former client's claim of ineffective assistance), the United States did not attach an affidavit from Mr. Woodward in its response to Petitioner's motion. Therefore, on May 21, 2012, the Court ordered Mr. Woodward to submit an affidavit responding to the allegations set forth in Petitioner's Motion to Vacate. (Docket No. 81.) Following a brief extension of time, Mr. Woodward submitted said affidavit on June 28, 2012. (Docket No. 84.) This matter has been fully briefed and is now ripe for decision.

## II. FACTUAL HISTORY

On February 29, 2008, Portsmouth Police Officer N. Hawes attempted to initiate a traffic stop after he observed a dark-colored Acura traveling at 67 miles per hour in a 35 mile per hour zone. (Docket No. 42.) According to the Statement of Facts, to which Petitioner gave both his oral and written assent, Officer Hawes observed the driver and sole occupant of the vehicle, later

---

[2] On July 29, 2011, Petitioner filed an Amended Memorandum in Support of his Motion to Vacate (Docket No. 71), and on March 29, 2012, Petitioner filed an untimely reply to the United States' response to his motion. (Docket No. 79.)

identified as Petitioner, lift the center console cover in the vehicle. Petitioner pulled over in the parking lot of Majik City and got out of the vehicle, shutting and locking the driver's side door behind him. (Docket No. 42.) The keys to the vehicle were later observed by police on the driver's floorboard. (Docket No. 42.) Backup officers arrived and stood with Petitioner while Officer Hawes began to write two traffic summonses. Petitioner repeatedly placed his hands in his pockets, despite being instructed by the backup officers to stop. (Docket No. 42.) Petitioner then reached into his pocket, removed a plastic baggie, bit off the end, and discarded the remainder of the baggie on the ground. (Docket No. 42.) Thereafter, Petitioner broke away from the offices, which led to a foot pursuit. (Docket No. 42.) Officers on the scene quickly apprehended and arrested Petitioner.

Petitioner's vehicle was towed and a search was conducted. During the search, Officer Hawes found a loaded handgun and a baggie containing a rocklike substance he believed to be crack cocaine. Subsequent forensic testing revealed that the baggie contained 5.501 grams of cocaine base, plus .425 grams of cocaine hydrochloride. (Docket No. 42.)

On April 17, 2007, Petitioner was stopped for a traffic violation by Virginia Beach Police Officers Latchman and Prevot. As Officer Latchman approached the passenger side of the vehicle, he observed in the passenger floorboard a plastic grocery bag filled with plastic sandwich bags and a small amount of cocaine base. (Docket No. 42.) While the officer was standing near the passenger side of the vehicle, Petitioner pulled away, initiating a brief car chase. (Docket No. 42.) Police later found the vehicle parked a short distance away from Petitioner's home. Upon entering the vehicle, police recovered the sandwich bags and cocaine base. Subsequent forensic testing revealed that the suspected narcotics contained .03 grams of cocaine base. (Docket No. 42.)

## III. LEGAL STANDARD

Collateral review created by 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (i) the sentence was imposed in violation of the Constitution or laws of the United States, (ii) the sentencing Court lacked jurisdiction, (iii) the sentence imposed was in excess of the maximum amount authorized by law, or (iv) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. The Supreme Court has held that § 2255 is the appropriate vehicle by which a federal prisoner may challenge both the fact of conviction itself and the terms of a post-conviction sentence. *Davis v. United States*, 417 U.S. 333, 343–44 (1974). When seeking relief under § 2255, a petitioner "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence." *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967) and *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

Section 2255 provides that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255. Thus, as a corollary, a court may dismiss a § 2255 motion if it is clearly inadequate on its face and if the petitioner would not be entitled to relief assuming the facts alleged in the motion are true. Where the record refutes a petitioner's factual allegations, dismissal is appropriate. Likewise, if the motion can be resolved exclusively on issues of law, and no questions of fact exist, then summary dismissal is appropriate without an evidentiary hearing. *See Green v. United States*, 65 F.3d 546, 548–49 (6th Cir. 1995) (finding that an evidentiary hearing was unnecessary because all claims by petitioner alleged legal errors). Similarly, the court need not hold an evidentiary hearing on a § 2255 petition if the motion and the files and

records of the case conclusively show that the prisoner is not entitled to relief. *United States v. Hackley*, 164 Fed.Appx. 301, *3 (4th Cir. 2006) (citing 28 U.S.C.A. § 2255(b)).

In the instant case, Petitioner is proceeding *pro se*. A *pro se* petitioner is entitled to have his petition and asserted issues construed liberally, and is held to less stringent standards than an attorney drafting such documents. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4 Cir. 1978), *cert denied*, 439 U.S. 970 (1978).

## IV. ANALYSIS

Although Petitioner raises a number of arguments in support of his Motion to Vacate, all center around the common allegation that his appointed counsel, Mr. Woodward, provided ineffective assistance of counsel. To succeed on this claim, Petitioner must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that (i) counsel's performance fell below an objective standard of reasonableness, and was therefore deficient, and (ii) this deficient performance prejudiced the defense such that, but for defense counsel's unreasonable performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687-88, 694. A petitioner's failure to satisfy either prong of the *Strickland* test renders it unnecessary for a reviewing court to consider the other element. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004).

To show that defense counsel's performance was objectively unreasonable, Petitioner must articulate specific acts or omissions whereby counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing the propriety of these alleged acts or omissions, courts must give substantial deference to defense counsel's strategic judgments. *Id.* at 689-690. Thus, the standard for deficient performance is

"not merely below average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." *Griffin v. Warden, Md. Corr. Adjustment Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992).

To satisfy the prejudice prong of *Strickland*, Petitioner must show that, but for counsel's unprofessional errors, it is "reasonably likely" that the result of the proceeding would have been different. *Harrington v. Richter*, 131 S. Ct. 770, 791-92 (2011). The prisoner bears the burden of proving *Strickland* prejudice, and "[i]f the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

A litigant who alleges ineffective assistance of counsel following a guilty plea must meet an even higher burden with respect to prejudice. In such cases, the prisoner must show that there is a reasonable probability that, but for counsel's errors, he would have foregone a plea of guilty and instead proceeded to trial. *See Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### A. Counsel Conducted Reasonable Pre-Trial Investigations

Petitioner first contends that Mr. Woodward neglected to interview Cory Lee and Demetrius Banks, two potential witnesses, whom Petitioner contends would have testified on his behalf. Petitioner represents to the Court that, had Mr. Woodward interviewed these potential witnesses, Petitioner would have proceeded to trial rather than plead guilty. Petitioner states that Demetrius Banks would have testified that the firearm discovered in the February 29, 2008, incident belonged to Banks, and not to Petitioner. Petitioner further argues that an alibi defense was his only meaningful defense to the April 17, 2007 offense, and that there was no evidence

supporting this defense other than Cory Lee's potential testimony. Thus, contends Petitioner, Mr. Woodward's failure to interview Lee and Banks prejudiced the outcome of his case.

However, at the time of he entered his plea of guilty, Petitioner indicated to the Court, while under oath, that he was "satisfied this [his] attorney[ had] fully considered all of the facts and discussed with [him] any possible defenses to the charges." Petitioner also acknowledged that he had read, signed, and agreed with everything contained in the Statement of Facts supporting the charges against him. The Statement of Facts indicated that Petitioner had in fact committed the offense charged in connection with the events of April 17, 2007 and February 29,, 2008. Petitioner cannot now disavow his affirmance of those facts. *See Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992) (absent "clear and convincing evidence to the contrary," statements made by a defendant under oath affirming satisfaction with counsel during a plea agreement hearing are binding on the defendant).

Moreover, Petitioner's claim with respect to these potential witnesses is devoid of any factual support. On the contrary, according to the affidavit submitted to the Court by Mr. Woodward, Mr. Woodward was provided access to taped calls and transcripts wherein Petitioner along with Corey Lee and Demetrius Banks plotted to present false testimony to the Court. Mr. Woodward informed Petitioner that following through with this plan would amount to a violation of the law and that Petitioner would face additional charges if he persisted in the plan. Therefore, the Court finds that Petitioner's claim that Mr. Woodward's failure to investigate potential alibi witnesses is entirely baseless.

### B. *Defense Counsel Was Not Laboring under a Conflict of Interest*

Petitioner next contends that Mr. Woodward was laboring under a conflict of interest, and that such conflict prejudiced the outcome of Petitioner's case. Specifically, Petitioner claims that Mr. Woodward had previously represented Majik City – the establishment outside of which the February 29, 2008 incident occurred, and that this caused Mr. Woodward not to pursue certain evidence vital to Petitioner's case – namely, surveillance videos from the Majik City parking lot. Where a Petitioner premises his ineffective assistance of counsel claim on the existence of a conflict of interest, *Strickland* is inapplicable. Instead, Petitioner must show "(1) that his lawyer was under an actual conflict of interest and (2) that this conflict adversely affected his lawyer's performance." *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007). Here, Petitioner fails on both prongs.

First, counsel had no actual conflict of interest. In September 2008, Mr. Woodward was retained to represent Victor Oshin, an individual with an ownership interest in Majik City. Mr. Woodward did not, at any time, represent Majik City and, according to counsel, the representation of Mr. Oshin in a tax fraud and money laundering case had "nothing whatsoever to do with Stitt's case." (Docket No. 84.) Indeed, nothing about Mr. Oshin's finances had any bearing on an incident which occurred in the parking lot of Majik City on the night of Stitt's arrest. Petitioner has failed to provide any support for the contention that Mr. Woodward's prior representation of Mr. Oshin was in any way "directly adverse" to his representation of Petitioner. Second, Petitioner's claim regarding reported surveillance videos has no basis in fact. There is no evidence that any such videos even existed. Moreover, even if these videos did, in fact, exist, they likely would not have shown the inside of Petitioner's car.

Thus, Petitioner cannot show that failure to secure the video tapes had some adverse effect on the outcome of his case.

### C. *Defense Counsel's Failure to File a Severance Motion was Reasonable*

Petitioner next contends that defense counsel's failure to file a motion to sever Counts One through Four, the charges arising out of the February 29, 2008 incident, from Count Five, the charge arising out of the April 17, 2007 traffic stop, amounted to ineffective assistance of counsel.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that separate offenses may be joined where those offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The Fourth Circuit has interpreted Rule 8(a) broadly, primarily for the purpose of promoting judicial economy. *See United States v. Branch*, 537 F.3d 340-41 (4th Cir. 2008) (affirming joinder of drug and firearm charges resulting from vehicle stop and "factually unrelated" drug charges from a prior arrest on the ground that all the charges stemmed from "episodes of cocaine base possession or distribution within a period of two months").

Petitioner argues that Mr. Woodward's failure to file a severance motion was based on "a mere assumption" that such a motion would not succeed. Petitioner contends that "[t]his was an instance where a weak evidentiary case and a slightly meager one were joined in the hopes that an overlapping consideration would lead to convictions on both." (Docket No. 69, p. 11). This is a misguided recounting of the record. The evidence against Petitioner on all counts was overwhelming, and there was substantial similarity between the events of April 17, 2007, and February 29, 2008. Both offenses involved possession with intent to distribute cocaine base, in

both cases, the suspect fled from police, and in both cases, the illegal substances in question were found in the same Black Acura, which law enforcement had identified as belonging to Petitioner.

A motion to sever in this case would have been baseless. Mr. Woodward's decision not to file a motion that he knew would be unsuccessful is precisely the kind of "strategic choice" that the Supreme Court in *Strickland* deemed to be "virtually unchallengeable" in post-conviction proceedings. *Strickland*, 466 U.S. at 690-91; *see also Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) ("Decisions that may be made without the defendant's consent [include] . . . what pre-trial motions should be filed"). Accordingly, Mr. Woodward's failure to file such a motion cannot support a claim for ineffective assistance of counsel.

### D. Defense Counsel Provided Generally Effective Assistance of Counsel

Petitioner's final claims include the following allegations: (1) that Mr. Woodward counseled Petitioner to plead guilty to Count One when Petitioner was not, in fact, guilty of that charge; (2) that Mr. Woodward permitted the United States to use perjured testimony at the November 2008 suppression hearing; and (3) that Mr. Woodward unreasonably failed to challenge the impoundment and towing of Petitioner's vehicle in connection with the February 29, 2008 incident. (Docket No. 69.) All of these claims necessarily fail.

The first claim is foreclosed by the fact that Petitioner stated, at the time of his guilty plea, that he was pleading guilty knowingly and voluntarily and because he was, in fact, guilty of the crimes charged. The second claim is entirely devoid of any factual support. Moreover, Petitioner nowhere indicates what testimony was false. Finally, as to the third claim, Mr. Woodward *did* challenge the impoundment of Petitioner's vehicle. This was the key issue in the Motion to Suppress submitted by Mr. Woodward on Petitioner's behalf.

## V. CONCLUSION

Because the record conclusively demonstrates that Petitioner is entitled to no relief, the Court declines to hold a hearing in this matter. *See* 28 U.S.C. § 2255(b) (stating that the Court must grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has conducted a thorough review of all filings in this matter, the records of prior proceedings, and all other materials in Petitioner's file, and the Court finds that an evidentiary hearing is not warranted.

For the foregoing reasons, Petitioner's Motion pursuant to 28 U.S.C. § 2255 is hereby **DENIED**. Petitioner is **ADVISED** that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. For the reasons stated herein, the Court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of appealability. The Clerk is **DIRECTED** to deliver a copy of this Order to Petitioner and to the United States Attorney's Office.

It is so **ORDERED**.

July 12, 2012

Norfolk, Virginia

/s/
Robert G. Doumar
Senior United States District Judge